IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                                          Case No. 1:21-cr-00524-KWR

LUIS MARISCAL-LOPEZ, AKA,
LUIS MARISOL-LOPEZ, AKA,
LUIS LOPEZ

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court following a *James* hearing held on January 17, 2023. Having reviewed the pleadings, the Court finds that the Government's Motion to Introduce Co-conspirator Statements (Doc. 63) is well-taken, and therefore, **GRANTED IN PART**.

## BACKGROUND

Defendant Mariscal-Lopez was indicted, along with co-Defendant Jorge Dominguez, on a two count Indictment for conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c), and kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1).

The Government asserts that Crystal Ramos, Jazmerae Torrez (J.T.), Luis Mariscal-Lopez (Boo Boo), Jorge Dominguez, and Johnny Black conspired in kidnapping and killing Jessica Mora. The Government moved to admit co-conspirator statements in furtherance of the charged conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E). Doc. 63. The Defendant filed a Motion to Produce Alleged Co-Conspirator Statement and for Pre-Trial Hearing on Their Admissibility. Doc. 74. The Court granted the Defendant's motion and ordered the Government to provide supplemental briefing regarding the identification of co-conspirators statements. Doc.

93. The Government filed their supplemental brief regarding the identification of co-conspirator statements. Doc. 118. However, the supplemental brief had narrative statements. The Court ordered the Government to file an additional supplemental brief with the explicit statements. Doc. 174. The Government filed a second supplemental brief regarding the identification of co-conspirator statements. Doc. 190. The Court set a James hearing for January 17, 2023.

## LEGAL STANDARD

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)-(2). "But testimony not offered to prove the matter asserted that is 'offered instead for *relevant* context or background' is not hearsay." *United States v. Becknell*, 601 F. App'x 709, 712 (10th Cir. 2015) (unpublished opinion) (quoting *United States v. Hinson*, 585 F.3d 1328, 1336 (10th Cir. 2009) ). Questions and comments do not constitute hearsay if they are not offered to prove the truth of the matter but are offered to show their effect on the other person in the conversation and provide context. *See United States v. Smalls*, 605 F.3d 765, 785 n. 18 (10th Cir. 2010).

Although hearsay statements are generally not admissible at trial, *see* Fed. R. Evid. 802, a statement that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay, and therefore may be admissible.   Fed. R. Evid. 801(d)(2)(E). For a statement to be non-hearsay under Rule 801(d)(2)(E), the district court must first find the following elements by a preponderance of the evidence: (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made during the course of and in furtherance of the conspiracy. *United States v. Rutland*, 705 F.3d 1238, 1248 (10th Cir. 2013). The elements of conspiracy, in turn, are: (1) there was an

agreement to violate the law; (2) the declarant knew the essential objective of the conspiracy; (3) the declarant knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were interdependent. *Id.* at 1249 (citing *United States v. Ailsworth*, 138 F.3d 843, 850-51 (10th Cir. 1998) ). The government, as the proponent of the evidence, has the burden of proving the relevant preliminary facts. *United States v. Perez*, 989 F.2d 1574, 1580 (10th Cir. 1993).

The government does not have to prove an express or formal agreement was made; rather, it merely has to show the coconspirators tacitly came to a mutual understanding. *Rutland*, 705 F.3d at 1250. "The existence of a conspiracy may be inferred from circumstantial evidence." *United States v. Martinez*, 825 F.2d 1451, 1452 (10th Cir. 1987). Interdependence means the coconspirators were united in a common goal or purpose. *Ailsworth*, 138 F.3d at 851. The trial witness need not be a co-conspirator, so long as the declarant is a co-conspirator with the defendant against whom the statement is being offered. *See United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995) ("in deciding whether statements are admissible under Rule 801(d)(2)(E), the appropriate focus is on whether the statements were 'made by' a member of the conspiracy, and not on whether the statements were 'made to' a member of the conspiracy"). One cannot conspire solely with government informants or agents. *United States v. Wells*, 739 F.3d 511, 528 (10th Cir. 2014).

When making a determination under Rule 801(d)(2)(E), the court "may consider both independent evidence and the statements themselves." *Rutland*, 705 F.3d at 1248. To satisfy Rule 801(d)(2)(E), the United States need show only that there is "some independent evidence linking the defendant to the conspiracy." *Martinez*, 825 F.2d at 1453 (relying on *Bourjaily v. United States*, 483 U.S. 171 (1987) ). "[S]uch independent evidence may be sufficient even it is not 'substantial.' " *United States v. Owens*, 70 F.3d 1118, 1125 (10th Cir. 1995) (quoting *United*

States v. Rascon, 8 F.3d 1537, 1541 (10th Cir. 1993) ). Independent evidence is any "evidence other than the proffered [coconspirator] statements themselves," and may include "an out-of-court statement by a coconspirator to a government agent during an investigation." *Owens*, 70 F.3d at 1125 (quoting *Martinez*, 825 F.2d at 1451).

With regard to the third element under Rule 801(d)(2)(E), "in furtherance" means that the statements are "intended to promote the conspiratorial objectives." *Rutland*, 705 F.3d at 1252 (quoting *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) ). Examples of statements the Tenth Circuit has held to be in furtherance of a conspiracy include statements explaining events of importance to the conspiracy, statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, statements identifying a fellow coconspirator, and discussions of future intent that set transactions to the conspiracy in motion or that maintain the flow of information among conspiracy members. *Id.* (internal quotations and citations omitted). Additionally, statements identifying members of a conspiracy, discussing particular roles of other coconspirators, and avoiding detection by law enforcement personnel are made "in furtherance of" a conspiracy. *Williamson*, 53 F.3d at 1520. "A coconspirator statement is made during the course of the conspiracy it if is made before the objectives of the conspiracy have either failed or been achieved." *Owens*, 70 F.3d at 1126 (quoting *Perez*, 989 F.2d at 1579). "[P]revious statements made by co-conspirators are admissible against a defendant who subsequently joins the conspiracy." *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991).

Rule 801(d)(2)(E) requires the trial court to make findings on the record regarding the required elements before admitting coconspirator's out of court statements. *See Perez*, 989 F.2d

4

at 1581. The "strongly preferred order of proof" in determining the admissibility of an alleged coconspirator's statement is to first hold a hearing outside the presence of the jury to determine whether the party offering the statements has established the existence of a conspiracy by a preponderance of the evidence. *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994). At the hearing, the district court has discretion to consider "any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial." *Owens*, 70 F.3d at 1124.

It is, however, permissible for a court provisionally to allow in the evidence with the understanding that the offering party will present evidence during the course of trial that will prove the existence of the predicate conspiracy. *Rutland*, 705 F.3d at 1248 n.3 (explaining that it was permissible for trial court to admit coconspirator statements provisionally, conditioning admission on government's promise to develop proof of conspiracy through later testimony, but noting Tenth Circuit has repeatedly mentioned its strong preference for *James* proceedings); *Owens*, 70 F.3d at 1123 (explaining that district court may make findings under Rule 801(d)(2)(E) either by holding *James* hearing outside presence of jury or may provisionally admit evidence with caveat that evidence must "connect" up during trial).

## DISCUSSION

The Government moved to admit certain statements by co-conspirators. The Government asserts that the statements are admissible because they are co-conspirator statements under Fed. R. Evid. 801(d)(2)(E).

At the *James* Hearing, the Court concluded that (1) a conspiracy existed and (2) the Defendant was a member of that conspiracy. At issue here is whether the (3) specific statements

5

were made in the course of and in furtherance of the conspiracy pursuant to Fed. R. Evid. 801(d)(2)(E), or whether the statements are admissible under another theory.

The Defendant's objections largely focused on (1) whether a conspiracy existed or (2) whether they were part of the conspiracy. The Defendant objected to some statements, as explained below. The Court finds that many of the statements discussed below are admissible because they are co-conspirator statements FRE 801(d)(2)(E) or admissible under another theory.

### I.     Defendant Agreed the Following Statements are in Furtherance of a Conspiracy

After the Court found that a conspiracy existed, the Defendant agreed at the *James* Hearing that the following statements are in furtherance of a conspiracy and no longer objected to their admission: B.2., B.4, B.6, C.1, C.2, C.3, C.4, C.5, D.2, D.5, D.7, and Facebook Messages from January 9, 2018 – January 15, 2018. Doc. 190. The Defendant agreed that the C.6. statement is in a furtherance of a conspiracy if the statement is from Ramos and Black. The Government agreed that the statement was from Ramos and Black.

The Court agrees that these statements are in furtherance of a conspiracy and finds the statements admissible.

### II.    Statements in Dispute

#### 1. Statements from Crystal Ramos

The Government seeks to admit Ramos' statements to Detective Marez on March 14, 2018, which include:

> Q: Do you know anybody that I could talk to that could – that still talks to her?
> A: You know what –
> Q: Or –
> A: When she was out here – I had heard she was out here, and I have no idea who she was with out here. Because she told me she was in Albuquerque, but she was here.
> Doc. 190 at 2.

> Q: All right now. I'll message her and see if I can get a response back or something at least.
> A: Okay, awesome.
> Q: Yeah, so we haven't talked.
> A: Right. All right, yeah.
> Q: I'll kick her in her mouth if I could.

Doc. 190 at 3.

First, the Defendant argues that if admitted, the statements would violate the Defendant's Sixth Amendment right to confrontation. Doc. 78 at 2. The Government argues that the statements are not testimonial. Doc. 85 at 1-2. The Court agrees with the Government that the statements are not testimonial, and thus the Confrontation Clause does not apply.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The United States Supreme Court has applied this only to testimonial evidence against the accused. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). "Testimony in turn, is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. (quotation omitted). While the Supreme Court has not provided a laundry list of what is considered testimonial, it has held that testimony includes statements made with the primary purpose of establishing or proving past events potentially relevant to later criminal prosecution, *Davis v. Washington*, 547 U.S. 813, 822 (2006), and statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (citation omitted). Additionally, the Confrontation Clause applies to only testimonial, as opposed to non-testimonial, statements that are offered to prove the truth of the matter asserted. *See Tennessee v. Street*, 471 U.S. 409, 414 (1985).

To support their argument, the Defendant relies on *United States v. Baines*, where the witness was detained by a border patrol agent and the Court held the statements were testimonial because of the custodial interrogation. 486 F.Supp.2d 1288, 1298 (D.N.M. 2007*); see also United States v. Vieyra–Vazquez*, No. 05–2281, 205 Fed.Appx. 688, 691, 2006 U.S.App.LEXIS 28220, at *7 (10th Cir. Nov. 13, 2006) (unpublished) (statement to border patrol agent offered to prove the truth of the matter asserted is testimonial because made in response to custodial interrogation). However, Ramos was not in a custodial interrogation. Det. Marez was investigating Mora as a missing person and contacted Ramos because they were Facebook friends. The discussion took place at Ramos' house in the doorway with Ramos' consent, and Ramos was free to return to her home or end the conversation. Because it was not a custodial interrogation, an objective witness would not reasonably believe that the statements would be available for use at a later trial. Therefore, the statements are not testimonial, and the Confrontation Clause does not apply.

Second, the Defendant argues that Ramos' statements were made after the conspiracy ended because the kidnapping and murder had already occurred, and therefore, did not further the conspiracy. Doc. 133 at 8. The Government argues that the conspiracy did not end until the final disposal of the body in the toolbox by the river. Doc. 149 at 4. The Court finds the conspiracy did not end until the final disposal of the body. The issue is when the final disposal of the body took place. The Government argues that the final disposal of the remains took place after Ramos's statements because Black stated the final disposal took place "around this time of year from an interview conducted on April 10, 2020" and J.T. told Dominguez they buried it by the river before Dominguez's April 11, 2018 interview. Doc. 149 at 5. During the *James Hearing*, FBI Agent Michelle Cobb testified that Mr. Abeyta said the body was on the property

for approximately three months. The alleged murder took placed on January 14, 2018 and January 15, 2018. The Court finds that the Government has established by the preponderance of the evidence that the body had not been disposed of at the time of this interview. Therefore, the conspiracy was still in progress. The Court finds by a preponderance of the evidence that the statements were made in the course of and in furtherance of the conspiracy because Ramos was attempting to conceal the crime through misdirection. *See United States v. Alcorta,* 853 F.3d 1123, 1139 (10th Cir. 2017) ("When a conspiracy is ongoing, statements that relate to 'avoiding detection by law enforcement personnel' can be in furtherance of the conspiracy." (citation omitted)); *see also United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988) ("[C]oncealment of the crime done in furtherance of the main criminal objectives of the conspiracy falls within the coconspirator exception."). Therefore, the Court finds the statements admissible.

**2. Statements from Jorge Dominguez**

The Government seeks to admit a statement Dominguez made to TFO Abeyta on April 11, 2018 and J.T. describing the final disposal of the remains.

> Q: Where'd you see it, where -
> A: It was there in the backyard. It's not there no more. But to me, Jazz told me that it was – that they buried it somewhere by the river, that it's really easy to find.
> Doc. 190 at 4.

The Defendant argues that the statement was made after the conspiracy. Doc. 193 at 5. The Government argues that statement should be admitted because it was J.T. communicating that the conspiracy was complete. Doc. 190 at 4. The Court agrees with the Government. The Tenth Circuit has held that a furtherance of a conspiracy includes statements "which inform each other of the current status of the conspiracy." *Perez*, 989 F.2d at 1578. J.T. communicating the completion of the conspiracy is providing the current status. Additionally, J.T. informed Dominguez where the remains were buried and "maintain[ed] the flow of information among

9

conspiracy members." *United States v. Rutland*, 705 F.3d 1238, 1252 (10th Cir. 2013). The Court finds by a preponderance of the evidence that it was made in the course of and in furtherance of the conspiracy.

The Government also seeks to admit Dominguez's statement on May 31, 2018 to FBI Agents Marcum and Maryez. In submitting the statements, the Government provided an FBI narrative report of its interview with Dominguez. The Court finds the narrative part is inadmissible unless testified to by a firsthand witness. However, the Court located the following statements:

> "Boo-Boo then appeared and said, in Spanish, that he "took her last breath." Doc. 190 at 7.
>
> "Boo-Boo told him everything had been taken care of, but Black said they still had to take care of the body." Doc. 190 at 8.
>
> "He awoken by Black and Ramos telling him and Romero they all needed to leave the house right away to dispose of Mora's body." Doc. 190 at 8.

During the *James* Hearing, the Defendant objected to the statement "he took her last breath" and Black and Ramos telling them they need to dispose the body. The Government argues that Mariscal-Lopez is indicating that the torture component of the conspiracy has ended because Mora is dead. The Government further argues that the statement is admissible as a party-opponent statement under Federal Rule of Evidence 801(d)(2)(A). The Court finds that the statements were made in the course of and in furtherance of the conspiracy. The Court finds that the statements inform the fellow conspirators of the status of the conspiracy and their future intent to continue the conspiracy. Specifically, Mariscal-Lopez is informing the others of Mora's death, and Black and Ramos are sharing their intent to dispose of the body. Therefore, the Court finds that the Government has established by the preponderance of evidence that the statements

were made in the course of and in furtherance of the conspiracy, and the statements are admissible.

Furthermore, Mariscal-Lopez's statements are admissible under Federal Rule of Evidence 801(d)(2)(A) because the statement is offered against Mariscal-Lopez and Mariscal-Lopez made the statement. His statements are not hearsay.

### 3. Statements from Jessica Romero

The Government seeks to admit statements from Jessica Romero made to the FBI on May 31, 2018. In submitting the statements, the Government provided an FBI narrative. The Court finds the narrative part is inadmissible unless testified to by a firsthand witness. The Court located the following statements within the narrative:

> Ramos called Mora and wanted to set her up and confront her about the stolen money. Ramos said she wanted to show Mora, "Who was boss." Ramos said they needed to "take her out." Ramos wanted to kill Mora. Ramos eventually called Mora and told her that Romero and Black were having an affair and took off with Ramos's money in order to lure Mora to the house. Doc. 190 at 16.
>
> They yelled at Mora while assaulting her, yelling, "You took money, how could you sit at our table." Mora took the beating until she was unconscious. Ramos complained that she wanted Mora to, "suffer" and was upset that "she was gone too easy." Doc. 190 at 17.
>
> Ramos said they had to get rid of the body quick so they, "lit it". Doc. 190 at 17.

The Defendant argues that Ramos yelling at Mora about the money is not in furtherance of a conspiracy, it is only her expressing her anger. The Government argues that the yelling at Mora described the intent and about why they were hurting Mora. The Court finds that the statement "You took money, how could you sit at our table" was not made in furtherance of a conspiracy. Doc. 190 at 17. While the statement discusses Ramos' intent, it does not further any plans. However, the Court finds the statement is admissible as an excited utterance under Federal

Rule of Evidence 803(2) because it occurred during the murder when Ramos was in an emotional state. The Court finds the statement admissible.

The Defendant further argues that wanting Mora to suffer, that she was gone too easy, and they lit it were all statements made after the fact and did not further the conspiracy. The Government argues that the statements about how she wanted suffering and that she gone too easy are about the plan. The Government also argues that "lit it" described what was happening at the time and it was during the conspiracy. The Court reserves on the statement "they had to get rid of the body quick, so they lit it." Doc. 190 at 17. It is unclear the time of the statement, and if the statement was made to a fellow co-conspirator. The Court will make its ruling at trial after hearing testimony. The Court finds Ramos complaining "that she wanted Mora to, "suffer" and was upset that "she was gone too easy" was made in the course of and in furtherance of the conspiracy. Doc. 190 at 17. The statement explains events of importance to the conspiracy and the status of the conspiracy because the conspiracy did not go as originally planned. The Court finds the statements admissible.

Finally, the Court finds that Ramos statement about wanting to take Mora out is the course of and in furtherance of the conspiracy. Doc. 190 at 16. The statements discuss Ramos' intent and describe the planning and execution of the conspiracy to lure and kidnap Mora. The Court finds the statement admissible.

### 4. Facebook Statements

The Government seeks to admit statements from Ramos she posted on Facebook messenger on or about March 23, 2018.

> No Date Provided
> CR: Woman! I have fought with myself over and over if I should try and message you, My anger towards you! The disappointment I feel about you, says "fuck no" let her be the less I hear from you the better! But than my heart says different and feels pitty for you

and wants to forgive…"but not anytime soon 😉" anyway "I'm list for words" I hard you was missing and didn't believe it figured you was shard of yourself and it utterly disgusted in your self and went MIA again, than I saw it everywhere and a investigator came by and confirmed it. Not to sure how to feel about it cause you did me so ducking dirty bitch! DAM … a few mos later and I am still in shock and pist more than anything wtf was you thinking? Who the fuck does that, bitch I got kids at home and you pull not 1 but 2 stupid unforgivable things …GRRRR. That was and is my fuckin life your playing with asshole! Until I know what the fuck is going on and what is real or not because of your decision my lil man Dad took him from me and you of all people know I need my boy!! Ugh!! … I'm not mad about the money. I am hurt tho. But that shit you pulled with the pisas. OMG… I can't believe you put my name in it ….ok I'll stop. What's done is done right and if shit gets real then guess we go to war.

March 23, 2018
CR: Cause I will not sit back and be bullied FOR REAL! Bitch you better go to war with me! And not just there your ads better be my right hand no you better be in front of me . . . shit I already paid you to be the body guard I just didn't know it . . . lol … Dude for real no joking, call someone "not me tho" hahaha 😉 this is bs I can understand hiding from me cause your ashamed but this shit is getting out of hand fuckin detectives coming over and shit! Yes I did tell her everything "almost" I rather see you in jail than to be all strung out . . . I'm speechless now "for once" hahaha not even sure how to word this shit never the less I don't know how not to make jokes lol but this is some real shit Jess! I don't know if you took that money from someone else to pay me back "I'm lucky I didn't go to jail" or if it's the "other" shit you pulled is what your running from "boost my ego and say your running from Me" lol than I might let you call me Sheera mofo call someone do something at least let me know what's up I NEED my fuckin home yo … test or call someone …I wish and hope the best for you. But I hope I don't see you.
CR: I ment I need my boy home

The Defendant argues that the statements themselves aren't in furtherance of a conspiracy because Ramos is talking about how she is angry with Mora. The Defendant further argues that it is unclear when the body was disposed of, and the statements may have been made after the conspiracy had ended. The Government argues that these statements are Ramos attempt to misdirect the police investigation. The Government further argues that the statements are not hearsay because the statements are not being offered for the truth of the matter asserted. The Court agrees that the Government has not met their burden in establishing the statements were made before the disposal of the body. The body was disposed of approximately 3 months after January 14, 2018 or January 15, 2018. It is unclear if the body was disposed of before or after

March 23, 2018. The conspiracy may had ended prior to the statement, and the Court finds the Government has not met their burden in establishing by a preponderance of the evidence that the statement was made in the course of a conspiracy. However, the Court agrees that the statements are not hearsay because they are not being offered for the truth of the matter asserted. The Government is offering the statements to show Ramos was trying to mislead the police in pretending that she thought Mora was alive, when she was in fact dead. Because the statements are not hearsay, the Court finds the Facebook statements admissible.

**IT IS THEREFORE ORDERED** that the Government's Motion to Admit Co-Conspirator Statements **(Doc. 63)** is **GRANTED IN PART.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE